# IN THE U.S. DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Aifulun Aierken, Plaintiff, residing in Worcester County, Massachusetts,** | )<br>)<br>) |
| v. | )<br>)<br>) **Civil Action No.** |
| **Jennifer B. Higgins, in her capacity as Acting Director of USCIS,** | )<br>)<br>)<br>) |
| **Defendant.** | ) |

## COMPLAINT FOR MANDAMUS AND INJUNCTIVE RELIEF

COMES NOW the Petitioner, Aifulun Aierken, and moves this Court to compel the Defendant above named to adjudicate his asylum claim as required by law.

## INTRODUCTION

1. Aifulun Aierken is a citizen of China who faces persecution there due to his Uyghur ethnicity and Muslim religion. The Chinese government has long oppressed the Uyghurs, and since 2017 it has escalated this oppression to a genocidal campaign of mass imprisonment, torture, and forced indoctrination designed to assimilate the Uyghurs by force and destroy all resistance, particularly targeting those Uyghurs like Aifulun Aierken who have been overseas for extended periods. Aifulun most recently entered the USA on May 6, 2017, and applied for asylum on December 31, 2018 (his lawful Fl student status in the USA exempted him from the usual one-year asylum deadline). (Exhibit 1). He was interviewed in the Boston Asylum Office, and his asylum application was denied on July 9, 2019 for patently erroneous reasons; for example, the officer claimed that Aifulun had not met his burden because his

1

evidence did not show that a//Uyghurs who returned to China were persecuted, even though it is primer asylum law that a 10% chance of persecution is sufficient to show a well-founded fear (Exhibit 2, p. 2). Because Aifulun was still in lawful F1 student status at the time his application was denied, he was not referred to Immigration Court.

2. Advised that the denial of his asylum application had been legally groundless, Aifulun renewed his application for asylum on May 13, 2020 (he had remained in student status until December 2019, thus continuing to be exempt from the one-year deadline) (Exhibit 1, Exhibit 3). As of the filing of this lawsuit in November, 2024, more than four years later, Aifulun still has not been interviewed.

3. Despite numerous efforts to get USCIS to schedule his asylum interview, and a clear duty by USCIS to adjudicate his application, Aifulun's asylum case remains pending with no resolution anywhere in sight. He has now been in the US more than seven years. He has spent this time in limbo, not knowing whether he can stay in the US or must face persecution in his homeland.

**PARTIES**

4. Aifulun Aierken is the plaintiff and the beneficiary of a pending asylum application with USCIS. He is a citizen of China and resides in Worcester County, Massachusetts.

5. Defendant Jennifer B. Higgins is the Acting Director of USCIS, who has direct responsibility for supervising the decision-making on Aifulun's asylum application. **Aifulun** is suing her in her official capacity.

6. Intentionally left blank.

## JURISDICTION AND VENUE

7. The U.S. District Court has jurisdiction to hear this case under the Mandamus Act, 18 U.S.C. § 1361, and under its federal question jurisdiction granted under 28 U.S.C. § 1331 to hear claims arising under the Administrative Procedure Act, 28 U.S.C. § 701-706.

8. Venue is proper in the District of Massachusetts because the defendant is an officer of the United States, the Plaintiff resides in Worcester County, Massachusetts, and no real property is involved in this action. 28 U.S.C. § 139l(e)(3).

## FACTUAL ALLEGATIONS

9. Aifulun is an Uyghur, a member of a Turkic ethnic group whose homeland, *Sherqiy Tiirkistan* or East Turkestan, has been occupied and annexed by the Chinese government at various times, most recently in 1949. East Turkestan is often known in the West by its Chinese name, "Xinjiang," which translates approximately as "new territory." Although the Chinese government promised to respect Uyghur rights - the territory is still officially called "Xinjiang Uyghur Autonomous Region" by the Chinese government - the reality in East Turkestan since 1949 has always been Chinese Communist Party dominance, exclusion of the Uyghurs from power and economic development, and ethnic Han Chinese assumption that Uyghurs would abandon their culture and assimilate to the Han culture and the Chinese Communist Party's ideology. Since 2017, the central government's policy has been one of mass imprisonment of Uyghurs, with as many as one to three million forced into concentration camps at a given time, in which they are terrorized, tortured, and forced to give up their language and religion (the great majority of Uyghurs are Muslim). The Chinese policy was recognized as genocidal by the U.S. State Department in January 2021.[1]

---

[1] "US Accuses China of 'Genocide' of Uyghurs and Minority Groups in Xinjiang," Jennifer Hansler, Zamira Rahim, and Ben Westcott, *C*     January 20, 2021. https://www.cnn.com/2021/01  /19  /us/us-xinjiang-china-genocide-intl/index.htrnl

10. At the time when the severest, ongoing stage of China's persecution of the Uyghurs began in 2017, Aifulun was a student in the University of Massachusetts, lawfully present on an Fl visa. He had previously been physically abused on account of his Muslim religion and Uyghur ethnicity by a Chinese officer. Aifulun became involved in the Uyghur American Association, an organization dedicated to protecting Uyghurs' culture and human rights. While remaining in lawful Fl student status, he filed for asylum affirmatively on December 6, 2018, and was interviewed in the Boston Asylum Office, a sub-office of the Newark Asylum Office. His claim was denied by the Asylum Office on July 9, 2019, without prejudice to his ability to file a new asylum claim. Significantly, the asylum officer did not find Aifulun incredible or dishonest; rather, the asylum application was denied due to the officer's egregious misunderstanding and misapplication of the law. This included a finding that Aifulun did not have a well-founded fear of persecution because he did not demonstrate that *all* Uyghurs who return to China are persecuted, even though it is well-established law that even a 10% chance of persecution suffices for a well-founded fear. (Exhibit 2, p. 2). Aifulun remained in Fl student status until December 2019, and filed a new affirmative asylum application on May 13, 2020 (Exhibit 1, Exhibit 3). On August 21, 2020, he gave his biometrics at the government's request (Exhibit 4).

11. Since that time, users has not decided Aifulun's asylum application or even scheduled the necessary interview. More than four years have passed with no action from users. Aifulun requested that users provide an expedited interview (Exhibit 5) and received no answer. He also requested aid from the users Ombudsman, an office of USCrS that acts as an immigrant advocate. The Ombudsman was unable to obtain an interview for him (Exhibit 6). He also requested help from his members of Congress, fruitlessly (Exhibit 7).

12. USCrS's policies have *de facto* suspended Aifulun's asylum application indefinitely, so that his case will *never* be decided without judicial intervention. In January, 2018, users adopted a

policy of deferring applications that have been pending more than 21 days.[2] This is called the "Last In, First Out" or "LIFO" policy.[3] This policy gives first priority to applicants whose interviews have been scheduled and then canceled, second priority to applicants whose applications have been pending 21 days or less, and last priority to older applications. The last priority cases are handled as follows: "All other pending affirmative asylum applications will be scheduled for interviews starting with newer filings and working back towards older filings."[4] Aifulun's case is in this third priority category.

13. USCIS consistently receives many more applications than it completes, leading to a constantly growing backlog. Migrants filed 456,750 affirmative asylum applications in 2023; at the same time, USCIS completed fewer than 74,000 cases.[5] By the end of FY2022, 572,022 affirmative asylum cases were waiting for interview with USCIS, up from 313,995 when USCIS adopted the LIFO policy.[6] Since the explicit policy is to interview new cases before old ones, it is thus mathematically impossible for Aifulun's case ever to be interviewed or decided under current

---

[2] USCIS, "Affirmative Asylum Interview Scheduling," last updated May 31, 2022, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling. An "affirmative" asylum case is one where the applicant requests asylum from USCIS without first having been placed in removal proceedings in Immigration Court, as opposed to "defensive" asylum cases where the applicant first requests asylum from the Immigration Court after being placed in removal proceedings.

[3] Ur Jaddou, "Backlog Reduction of Pending Affirmative Asylum Cases" p. 2, Oct. 20, 2021, https://www.dhs.gov/sites/default/files/2021-12/USCIS%20-%20Backlog%20Reduction%20of%20Pending%20Affirmative%20Asylum%20Cases.pdf

[4] See Footnote 1 above.

[5] USCIS, "Asylees 2023: Annual Flow Report," Noah Schofield and Amanda Yap, October 2024, p. 3, 6. https://ohss.dhs.gov/sites/default/files/2024-10/2024_1002_ohss_asylees_fy2023.pdf

[6] USCIS, "Form I-589, Application for Asylum and for Withholding of Removal, by Status, Office, Month, April 1, 2022-June 30, 2022 https://www.uscis.gov/site/default/files/document/data/AsylumDivisionQuarterlyStatsFY22Q3_I-589_FilingCompletionPending.csv; Asylum Office Workload, January 2018, https://www.uscis.gov/sites/default/files/document/data/PED_AsylumOfficeWorkloadJan2018.pdf; USCIS, "Asylum Application Processing, Fiscal Year 2023: Fiscal Year 2023 Report to Congress," ov. 1, 2023, p. 6. https://www.dhs.gov/sites/default/files/2024-01/2023_1101_uscis_asylum_application_processing_fy2023.pdf

5

users rules, absent administrative intervention that he has already requested and which USeIS has refused.

14. Defendant USCIS's public statements provide evidence that the delay in Aifulun's case has been unreasonable. Defendant users, through its former Director Ur Jaddou, stated in 2022, "Let me be very clear. Our processing times are too long. There are no ifs, ands, or buts about it."[7]

15. USCIS's failure to act damages Aifulun due to the constant fear and uncertainty of whether he will be allowed to stay in the U.S. or be returned to China to face persecution. Without a final decision on his asylum case, Aifulun and his wife must apply for Employment Authorization Documents regularly, which cost time and money and can take more than a year to be adjudicated, confronting them both with constant risk of unemployment. He cannot travel internationally because his passport is expired (Exhibit 8), China will not renew a Uyghur's passport,[8] and a refugee travel document is not available to him until he is granted asylum. He has been diagnosed with depression related to these problems (Exhibit 9).

16. USCIS's delay also prejudices Aifulun's asylum claim, because with the passage of years, his memory will fade, making it harder for him to testify to an asylum officer or immigration judge. It will also become harder to get evidence and witnesses to corroborate the asylum claim.

**COUNT I: INJUNCTIVE RELIEF UNDER ADMINISTRATIVE PROCEDURE ACT**

17. The foregoing paragraphs are incorporated by reference.

---

[7] "USCIS Director: Federal immigration funds 'critical' to agency," Suzanne Monyak, *Roll Call,* Feb. 2, 2022. https://rollcall.com/2022/02/02/uscis-director-federal-immigration-funds-critical-to-agency/

[8] See U.S. State Department's China 2022 Human Rights Report, page 23. https://www.state.gov/wp-content/uploads/2023/03/415610 CHINA-2022-HUMAN-RIGHTS-REPORT.pdf

18. The Administrative Procedure Act mandates that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). A reviewing court "shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706.

19. USCIS's failure for nearly four years to interview Aifulun or decide his application is unreasonable.

20. Congress has directed USCIS to decide asylum applications within 180 days. "[I]n the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an asylum application is filed." 8 U.S.C. § 1158(d)(S)(A)(iii). USCIS has at no time suggested to Aifulun or anyone connected with this case that it presents any exceptional circumstances. The existence throughout many years of a permanent backlog is, by definition, not exceptional or unusual; USCIS has allowed it to become the usual state of affairs.

21. Therefore, Aifulun asks the Court to order Defendant to adjudicate his asylum application within 30 days under the Administrative Procedure Act.

## COUNT II: MANDAMUS ACT

22. Defendant has a clear duty to administer and enforce the Immigration and Nationality Act (INA). *See* **INA§** I 03; 8 U.S.C. §1103 (regarding *inter alia* the duties of the Secretary of Homeland Security and United States Attorney General). Thus, Defendant has a clear duty to adjudicate Aifulun's asylum application, but has failed to do so for almost four years. This breach of the Defendant's duty is ongoing, despite all reasonable efforts by Aifulun and his attorney to check the status of the application and cooperate with the agency in expediting and concluding this process. Moreover, this breach of the Defendant's duty has no foreseeable end, and will never be rectified under current USCIS policy. Aifulun therefore has no remedy but judicial intervention to compel Defendant to do her statutory duty.

23. As a result, Plaintiff is entitled to injunctive and other relief.

**REQUEST FOR RELIEF**

24. Wherefore, Aifulun prays for judgment against Defendant Higgins in her capacity as Acting Director of USCIS and respectfully asks this Court to enter an order requiring Defendant to interview Aifulun within 30 days, to complete adjudication of his case within 120 days, to pay his costs, and providing him all other relief at law and in equity that justice may require.

Dated: January 23, 2025

Respectfully submitted,

_____
Daniel R. Baker, Attorney for Plaintiff
Dist. of Maryland Federal Bar #30855
Daniel R. Baker, LLC
5020 McFarland Drive
Fairfax VA 22032
Telephone: (571) 278-4479
Fax: (866) 772-3537
daniel@danielrbakerlaw.com
Pro Hae Vice application pending


_____
Jeffrey Goldman
BBO#548056
Goldman & Partners Immigration Law
125 Washington Street, Ste 204
Salem MA 01970
Telephone: (978) 219-5055
jeff@gpimmi2"ration.com